UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 26-CV-60221-STRAUSS

AARON C. TIMBERLAKE,

    Plaintiff,

v.

PALM BEACH COUNTY SHERIFF'S OFFICE et al.,

    Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE
## TO PROCEED *IN FORMA PAUPERIS* AND REQUIRING AMENDED COMPLAINT

**THIS MATTER** came before the Court upon Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs [DE 3] (the "IFP Motion"). For the reasons described below, the IFP Motion is **GRANTED**. However, the Court will require Plaintiff to file an amended complaint no later than **February 20, 2026**, because the Complaint, upon initial screening, fails to state a claim upon which relief could be granted.

## BACKGROUND

On January 27, 2026, Plaintiff filed his Complaint against the Palm Beach County Sheriff's Office, multiple deputies (including an anonymous one), and two supervising officers (collectively, "Defendants"). *See generally* [DE 1]. Plaintiff's Complaint first alleges that a police K9 (handled by one of the named defendants) bit him "during a law enforcement encounter." [DE 1] at 9. Other named defendants were allegedly present around the time of this encounter. *Id.* The bite caused several injuries. *Id.* Despite the injuries, Plaintiff alleges that he "was not promptly transported for medical treatment." *Id.* Several deputies instead "delayed access to appropriate medical care, increasing pain, risk of infection, and severity of injury." *Id.*

Plaintiff was later taken to the hospital. *Id.* While there (and while in custody and restrained), certain deputies allegedly did not inform the medical staff at the hospital that a police K9 bit Plaintiff. *Id.* Once in a treatment room, an anonymous deputy defendant stood by the medical staff and, according to Plaintiff, "interfered with Plaintiff's medical care." *Id.* For example, the unnamed deputy supposedly attempted to compel a catheterization procedure over Plaintiff's objection, which Plaintiff alleges caused distress and violated Plaintiff's bodily integrity. *Id.*

Plaintiff further alleges that the harms he suffered include "physical injury, pain and suffering, emotional distress, medical complications, and loss of liberty." *Id.* Plaintiff seeks compensatory damages, punitive damages, and injunctive relief. *Id.* at 10. Specifically, Plaintiff asks for "injunctive and declaratory relief requiring Defendants to cease practices that interfere with medical care, bodily integrity, and timely treatment of persons in custody . . . ." *Id.*

Plaintiff elsewhere asserts that, in addition to the referenced deputies, two supervising officers are liable because they were "responsible for the conduct of the deputies involved and failed to intervene." *Id.* at 9. Moreover, the Palm Beach Sheriff's Office is supposedly liable because its training and supervision of the officers allowed the above events to happen. *Id.*

At the same time Plaintiff filed his Complaint, he also filed the IFP Motion, which asks for this Court to permit Plaintiff to proceed without paying the filing fee. *See* [DE 3] at 1-5. Regarding income and assets, the IFP Motion details that Plaintiff's average total monthly income for the last twelve months was $1,179.90, which came from a combination of self-employment and retirement income. *Id.* at 1-2. Yet the amount of income he expects next month is $501.00, which will predominantly come from self-employment (minus $1.50 from employment). *Id.* The IFP Motion also indicates that Plaintiff was employed at one job from August 2024 to October 2025 and at

another job from May 2019 to the present. *Id.* at 2. The gross monthly pay for each job is listed as $1,500.00 per month. *Id.* Plaintiff also has some money (totaling less than $2,300) saved in various bank accounts and other financial institutions. *Id.* In addition, Plaintiff has a motorcycle valued at $1,750.00. *Id.* at 3.

By contrast, Plaintiff avers that his total monthly expenses are $4,474.62, including (among other things) rent, utilities, food, medical expenses, and transportation. *Id.* at 4-5. Plaintiff does not expect major changes to his income, expenses, assets, or liabilities in the next twelve months and explains that his income is "limited and inconsistent." *Id.* at 5. Moreover, Plaintiff asserts that his basic living expenses consume his available funds and that he does not have enough money to allow him to pay court fees without sacrificing necessities. *Id.*

## ANALYSIS

### I. PLAINTIFF MAY PROCEED WITHOUT PREPAYING FEES OR COSTS

In the IFP Motion, Plaintiff seeks to proceed without prepaying fees and costs. *See* [DE 3] at 1. Pursuant to 28 U.S.C. § 1915, the Court may, upon a finding of indigency, authorize the commencement of an action without requiring the prepayment of fees or security. 28 U.S.C. § 1915(a)(1). The granting of a motion to proceed *in forma pauperis* is discretionary. *Pace v. Evans*, 709 F.2d 1428, 1429 (11th Cir. 1983). "When considering a motion filed under Section 1915(a), '[t]he only determination to be made by the court . . . is whether the statements in the affidavit satisfy the requirement of poverty.'" *Raftery v. Vt. Student Assistance Corp.*, 2016 WL 11579801, at *1 (M.D. Fla. Feb. 17, 2016) (quoting *Martinez v. Kristi Kleaners, Inc.*, 364 F.3d 1305, 1307 (11th Cir. 2004)). "[A]n affidavit will be held sufficient if it represents that the litigant, because of his poverty, is unable to pay for the court fees and costs, and to support and provide necessities for himself and his dependents." *Martinez*, 364 F.3d at 1307. A plaintiff, however,

3

need not be "absolutely destitute." *Id.* Accordingly, a court must compare "the applicant's assets and liabilities in order to determine whether he has satisfied the poverty requirement." *Thomas v. Chattahoochee Jud. Cir.*, 574 F. App'x 916, 917 (11th Cir. 2014).

Here, even though some of the information within the IFP Motion is inconsistent or contradictory, the Court concludes that Plaintiff may still proceed *in forma pauperis*. If taken at the highest possible amounts, Plaintiff's income and assets may slightly exceed his expenses and liabilities. By contrast, if taken at the lowest possible amounts, Plaintiff's income and assets do not exceed his expenses and liabilities. The Court also recognizes that Plaintiff does not appear to have large sums of money or other readily available assets to dip into without potentially jeopardizing Plaintiff's ability to pay for certain necessities. Additionally, Plaintiff notes that his income is "inconsistent," meaning that Plaintiff is not always making the highest possible amounts per month. [DE 3] at 5. Therefore, even though the Court would not consider Plaintiff to be "absolutely destitute," *Martinez*, 364 F.3d at 1307, the Court still concludes that Plaintiff has established the poverty requirement of 28 U.S.C. § 1915(a). Plaintiff thus may proceed *in forma pauperis*.

## II.     PLAINTIFF MUST FILE AN AMENDED COMPLAINT

Although the Court will allow Plaintiff to proceed without prepaying fees and costs, Plaintiff must file an amended complaint. The screening provisions of 28 U.S.C. § 1915(e) apply here since Plaintiff has sought leave to proceed *in forma pauperis*. Under that statute, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). As discussed below, Plaintiff's Complaint [DE 1] is subject to dismissal for multiple reasons. However, rather

than dismissing Plaintiff's Complaint now, the Court will provide Plaintiff an opportunity to file an amended complaint to see if Plaintiff can rectify the deficiencies with the current Complaint. Failure to rectify the issues outlined below may result in dismissal without any further opportunity to amend the Complaint.

Generally, in preparing his amended complaint, Plaintiff should ensure that he complies with all applicable rules, including Rules 8 and 10 of the Federal Rules of Civil Procedure.[1] In accordance with Rule 8, Plaintiff's amended complaint must contain: "(1) a short and plain statement of the grounds for the court's jurisdiction . . . ; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads

---

[1] *Pro se* pleadings are liberally construed and held to "less stringent standards" than pleadings drafted by attorneys. *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020). "Yet even in the case of *pro se* litigants this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168-69 (11th Cir. 2014). Moreover, *pro se* litigants are required to comply with procedural rules. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) ("[A]lthough [courts] are to give liberal construction to the pleadings of pro se litigants, '[courts] nevertheless have required them to conform to procedural rules.'" (citing *Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002))).

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff's Complaint is deficient in multiple ways. First, an amended complaint is necessary because the current one is a "shotgun pleading." *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) ("Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"). As stated earlier, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Additionally, Rule 10(b) requires that "[a] party . . . state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A few types of shotgun pleadings exist, but "[t]he unifying characteristic of all types of shotgun pleadings is that they fail to . . . give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. One type of shotgun pleading occurs when the complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1322. Another type occurs when the complaint fails to separate each cause of action or claim for relief into different counts. *Id.* at 1323. A third type occurs when the complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.*

Plaintiff's Complaint is a shotgun pleading. First, it does not contain consistently numbered paragraphs with "each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). Second, although the Complaint contains different claims, [DE 1] at 9 (separating claims numbered one through five), it is unclear whether these claims are separate

6

causes of action or are meant to be considered together or partly together. The claims *could* be read as separate counts, but any amended complaint should more clearly delineate the distinction. Third, an amended complaint should also more clearly specify which Defendants are responsible for which acts or omissions. Plaintiff makes conclusory statements about certain actions of Defendants, but the Complaint hardly details *how* any of these improper acts or omissions happened or which acts or omissions are attributable to which Defendants.

Relatedly, the Complaint fails to state any plausible claim. On the civil coversheet, Plaintiff indicates that he is bringing claims under 42 U.S.C. § 1983. [DE 1-1] at 1. "To prevail on a § 1983 claim, a plaintiff must show that: (1) the defendant deprived him of a right secured by the Constitution or federal law; and (2) the deprivation occurred under color of state law." *Hayes v. Sec'y, Fla. Dep't of Child. & Fams.*, 563 F. App'x 701, 702-03 (11th Cir. 2014) (citing *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998)). Because § 1983 is only a vehicle for a claim to be brought against those acting under the color of state law, "a § 1983 plaintiff must allege a specific federal right violated by the defendant." *Doe v. Sch. Bd. of Broward Cnty.*, 604 F.3d 1248, 1265 (11th Cir. 2010).

In Plaintiff's first claim, Plaintiff appears to be asserting that the use of force was excessive in violation of the Fourth Amendment. *See* [DE 1] at 9. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Brown v. City of Huntsville*, 608 F.3d 724, 737 (11th Cir. 2010) (citing *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002)). However, the mere fact that a police K9 bit and injured Plaintiff does not mean that Defendants violated the Fourth Amendment. Plaintiff must instead plead more factual content to raise a plausible inference that the use of force was excessive or that the other deputies present failed to intervene. *Cf. Jenkins v. Campbell*, No.

7

209CV513FTM36SPC, 2011 WL 13295059, at *2 (M.D. Fla. July 12, 2011) ("Plaintiff asserts that the police officers violently seized him by kicking and punching him, in addition to allowing a police dog to bite him repeatedly. However, without further information and clarification, the Court cannot determine if Plaintiff has stated a sufficient claim upon which relief can be granted."); *Stepp v. Brown*, No. 22-CV-590, 2022 WL 2717388, at *2 (M.D. Fla. July 13, 2022) ("Although Stepp identifies his injuries, he fails to provide any factual context by which a court could evaluate the plausibility of the excessive force and failure-to-intervene claims. Stepp does not describe his actions preceding his apprehension (and thus whether there was a need for the application of force as alleged) or how the K9 attack occurred. Without such factual detail, Stepp has not stated an excessive force claim because he has not alleged that the use of force was 'gratuitous.'").

Similar issues seemingly plague the rest of Plaintiff's claims. For example, the second claim (for "Delayed and Inadequate Medical Care") does not state what federal right Defendants violated. *See* [DE 1] at 9. The second claim is also just two sentences, both of which are conclusory and do not contain supporting factual allegations. The second claim does not explain how Defendants failed to transport Plaintiff for medical treatment or how Defendants delayed access to medical care. Claim three asserts that Defendants did not inform medical staff at the hospital that a police K9 bit Plaintiff, but Plaintiff does not explain what federal right this action or inaction violates. Although claim four appears to be asserting some type of privacy-based theory based on the unnamed deputy's interference with Plaintiff's medical care, such as by trying to force a catheterization procedure, the claim is still too unclear, vague, and conclusory to state a plausible claim. It is unclear whether Plaintiff is asserting a violation of his Fourth Amendment rights (based on the alleged forced catheterization) or some other constitutional right. And, at any

8

rate, the claim lacks any factual allegations explaining what the unnamed deputy did to compel the catheterization or what else the deputy did that interfered with Plaintiff's medical care.

This fourth claim is deficient for another reason as well. The claim is directed at "Deputy John Doe" for "Interference With Medical Care and Bodily Intrusion." [DE 1] at 9. However, it must be dismissed because, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). Complaints must instead provide the parties' names. *See* Fed. R. Civ. P. 10(a). A limited exception exists "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson*, 598 F.3d at 738 (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)). But satisfying the exception requires the description to be "sufficiently clear to allow service of process." *Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) (quoting *Dean*, 951 F.2d at 1216). Here, Plaintiff gives only a one-sentence description of Deputy John Doe, detailing that he was in the treatment room and interfered with Plaintiff's medical care. [DE 1] at 9. This description is simply too vague to identify this deputy from all the others that work at the Palm Beach Sheriff's Office. *Cf. Richardson*, 598 F.3d at 738 ("[T]he description in Richardson's complaint was insufficient to identify the defendant among the many guards employed at CCI, and the district court properly dismissed this claim."). Plaintiff must provide more identifying information.

The fifth claim is against two supervising officers and the Palm Beach Sheriff's Office. It asserts that the supervising officers are responsible for the conduct of the other deputies and have failed to intervene. [DE 1] at 9. Moreover, it states that the Palm Beach Sheriff's Office is liable based on its responsibility for the polices, training, supervision, and practices that "allowed the above conduct to occur." *Id.* "[S]upervisory liability under § 1983 occurs either when the

supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated on other grounds by*, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Bridges v. Poe*, 155 F.4th 1302, 1314 (11th Cir. 2025)); *see also Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) ("It is well established in this circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates 'on the basis of respondeat superior or vicarious liability.'" (quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994))). Plaintiff does not allege that the supervising officers personally participated in the actions and does not allege facts from which causation could be inferred, e.g., a history of widespread abuse that would put these supervisors on notice of the issues or a custom or policy that results in a deliberate indifference to constitutional rights. *See, e.g.*, *Cottone*, 326 F.3d at 1360.

The part of the fifth claim against the Palm Beach Sheriff's Office also fails because the Complaint lacks allegations indicating that the Palm Beach Sheriff's Office had a custom or policy that causes or results in the violation of federal rights. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91 (1978); *cf. Gambuzza v. Gillum*, No. 8:08-CV-1809-T-26TGW, 2009 WL 425954, at *1 (M.D. Fla. Feb. 20, 2009) ("[T]o hold the Sheriff's office liable in an official capacity suit, the plaintiff must allege that the execution of a sheriff's office policy or custom inflicts injury covered under § 1983." (footnote omitted)).

In sum, Plaintiff must, at the very minimum, do the following things in any amended complaint: (1) separate allegations into numbered paragraphs; (2) separate claims into different counts that identify which Defendants each count is brought against; (3) explain which Defendants are responsible for which acts or omissions; (4) provide supporting factual allegations to support

legal conclusions such that the factual content raises a plausible inference that Defendants are liable; (5) identify which constitutional or federal rights each Defendant allegedly violated and how that Defendant did so; (6) provide the name of the unnamed deputy or more detailed allegations that would allow them to be identified for service of process; and (7) include additional factual content regarding how the supervisors or the Palm Beach Sheriff's Office could be liable for the harm of subordinates or agents.

These highlighted issues are only intended to provide some guidance to Plaintiff; they are not necessarily an exhaustive list of all the deficiencies with Plaintiff's Complaint. Because of the Complaint's deficiencies, the Court will require Plaintiff to file an amended complaint. Plaintiff must rectify any deficiencies with his Complaint, including those outlined above.

## CONCLUSION

For the foregoing reasons, it is **ORDERED and ADJUDGED** that:

1. Plaintiff's IFP Motion [DE 3] is **GRANTED**. Plaintiff may proceed *in forma pauperis*.

2. No later than **February 20, 2026**, Plaintiff shall file an amended complaint in accordance with this Order (i.e., an amended complaint that rectifies the deficiencies with Plaintiff's current complaint). Failure to do so may result in dismissal of this action without further notice.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 30th day of January 2026.

*/s/ Jared Strauss*
Jared M. Strauss
United States Magistrate Judge

11